UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LOKERSON, | Case No. 1:23-cv-01513-HBK (PC) |
| Plaintiff, | ORDER TO RANDOMLY ASSIGN A DISTRICT JUDGE |
| v. | |
| C. PFEIFFER, | FINDINGS AND RECOMMENDATIONS TO DISMISS CASE[1] |
| Defendants. | (Doc. No. 13) |
| | FOURTEEN-DAY OBJECTION PERIOD |

Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's Second Amended Complaint. (Doc. No. 13). For the reasons set forth below, the undersigned recommends the district court dismiss the Second Amended Complaint because it fails to state any cognizable federal claim and any further amendment would be futile.

**SCREENING REQUIREMENT**

A plaintiff who commences an action while in prison is subject to the Prison Litigation Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief against a governmental entity, its officers, or its employees before directing service upon any defendant. 28 U.S.C. § 1915A. This requires the court to identify any cognizable claims and

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2023).

dismiss the complaint, or any portion, if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). The Court's review is limited to the complaint, exhibits attached, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c). A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

The Federal Rules of Civil Procedure require only that a complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Nonetheless, a claim must be facially plausible to survive screening. This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading can be remedied by alleging other facts, a pro se litigant is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d

1  245, 248 (9th Cir. 1995). However, it is not the role of the court to advise a pro se litigant on how
2  to cure the defects. Such advice "would undermine district judges' role as impartial
3  decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131
4  n.13. Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad
5  faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by
6  amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892
7  (9th Cir. 2010).

## BACKGROUND AND SUMMARY OF OPERATIVE PLEADING

Plaintiff, a state prisoner proceeding pro se and *in forma pauperis*, initiated this action by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. No. 1). On November 28, 2023, the undersigned screened Plaintiff's original complaint and found that it failed to state any cognizable constitutional claim. (*See* Doc. No. 9). The Court advised Plaintiff of the pleading deficiencies and applicable law and afforded Plaintiff the opportunity to file an amended complaint. (*Id.*). Plaintiff timely filed a First Amended Complaint. (Doc. No. 10) ("FAC"). Prior to the Court screening the FAC, Plaintiff filed a motion to disregard his FAC and for the Court to accept his later filed amended complaint, a lodged Second Amended Complaint. (Doc. Nos. 11, 12, 13). On January 16, 2024, the Court granted Plaintiff's motion to disregard the First Amended Complaint and deemed the lodged Second Amended Complaint (Doc. No. 13, "SAC") the operative complaint in this matter. (*See* Doc. No. 15).

The events in the SAC took place at Kern Valley State Prison ("KVSP"). (*See generally id.*). The SAC identifies C. Pfeiffer, the Warden of KVSP, as the sole Defendant in this action. (*Id.* at 2). The SAC alleges an equal protection claim under the Fourteenth Amendment. (*See generally id.*). The following facts are presumed to be true at this stage of the screening process.

Plaintiff is housed in the Correctional Treatment Center ("CTC") at KVSP. Under a rule specific to KVSP known as OP 1015, inmates who are housed in CTC are prohibited from having or buying personal food. (*Id.* at 3). Meanwhile, inmates in general population may buy personal food in four different ways—through canteen purchases, package purchases, via food sales offered by community restaurants, and through food provided by visitors during contact visits.

1  (*Id.*). Plaintiff inquired as to the reason for this restriction and staff advised him that the rule was
2  implemented by Defendant Pfeiffer at the request of KVSP medical staff so that they could
3  enforce dietary restrictions on CTC patients. (*Id.* at 3-4). Plaintiff asserts that the rule is
4  overbroad because certain CTC inmates like him do not have dietary restrictions, contrary to Title
5  15 of the California Code of Regulations, and argues the rule is discriminatory because it applies
6  only to CTC inmates. (*Id.* at 4). Moreover, Plaintiff notes that no such restrictions have been in
7  effect in other CDCR facilities where he has been incarcerated, including High Desert State
8  Prison, Salinas Valley State Prison, and California Health Care Facility. (*Id.*). Plaintiff contends
9  that the impact on prison staff of permitting personal food, at least through package delivery or
10 contact visits, would be minimal. (*Id.*).

  As relief, Plaintiff seeks "modification of OP 1015 to allow personal food in CTC," a
"directive by the Court that Warden provide the same access to personal food to CTC inmates as
is available to inmates in the general population," monetary damages, and court costs. (*Id.* at 5).

## APPLICABLE LAW AND ANALYSIS

### A. Equal Protection Claim

"No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). There are two different ways in which a plaintiff may state an equal protection claim. A plaintiff's first option is to allege "facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class[.]" *Id.* (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)). The second way a plaintiff may state a claim is "as a 'class of one' by alleging that [the] plaintiff has 'been intentionally treated differently from others similarly situated and that there is no rational basis for the treatment[.]" *Koboyashi v. McMulling*, 2022 WL 3137958, at *23 (C.D. Cal. May 31, 2022) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Because "the disabled do not constitute a suspect class" for equal protection purposes, a governmental policy that purposefully treats the disabled differently from the non-disabled need

4

only be "rationally related to legitimate legislative goals" to pass constitutional muster. *Does 1–5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) (citing *City of Cleburne*, 473 U.S. at 440).

In assessing whether a prison policy that impacts a fundamental right is in fact reasonably related to legitimate penological interests, the Supreme Court has identified four relevant factors courts should consider: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there are alternative means of exercising the right that remain open to prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) the presence or "absence of ready alternatives." *Id*. at 89–90 (internal quotation marks omitted)

Here, liberally construed, the SAC alleges that OP 1015 discriminates against inmates housed in the CTC by revoking canteen or personal food privileges that are provided to general population inmates. The FAC fails to state an Equal Protection claim, however, because OP 1015 does not impact a fundamental right protected by the constitution, does not discriminate against a suspect class, and is reasonably related to a legitimate penological objective.

To the extent Plaintiff challenges the rule on the basis that he is a member of a protected class, that challenge fails. As noted above, because "the disabled do not constitute a suspect class" for equal protection purposes, a governmental policy that purposefully treats the disabled differently from the non-disabled need only be "rationally related to legitimate legislative goals" to pass constitutional muster. *Does 1–5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) (citing *City of Cleburne*, 473 U.S. at 440).

Nor does the regulation burden a fundamental right. Prisoners have no constitutional right to access personal food, only to be provided food that sustains them in good health. *See McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir.1987) (Holding that "[i]nmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion"); *see also LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing") citing *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th

Cir. 1977). Because OP 1015 does not burden any fundamental right, it need only be rationally related to a legitimate government objective. *See, e.g., LaFaele v. Schwarzenegger*, 369 F. App'x 862, 863 (9th Cir. 2010) (denying equal protection challenge to prison ban on tobacco use because plaintiff had not shown that tobacco use is a fundamental right, and plaintiff's complaint indicated that the rule was rationally related to legitimate government objectives.)

The SAC acknowledges Defendant Pfeiffer enacted the regulation at the behest of medical staff to ensure the dietary restrictions that protect the health and wellbeing of patients in CTC are followed. Such a regulation clearly advances a legitimate penological objective. See, e.g., *Winston v. Gipson*, 2023 WL 2588174, at *10 (N.D. Cal. Mar. 20, 2023) (finding prison regulation prohibiting most use of tobacco products by inmates serves legitimate penological objective because "allowing inmates to use tobacco products caused significant health problems for them, which increased the health care cost for CDCR to treat inmates suffering various conditions due to prolonged smoking and other use of tobacco products"). Ensuring that sick or injured inmates or those with chronic conditions adhere to their prescribed diets further the legitimate goal of protecting those inmates' wellbeing, which also reduces health care costs for CDCR to treat them. Because the SAC lacks any allegation that KVSP fails to provide an adequate diet, and because OP 1015 further the legitimate penological objective of advancing the health and wellbeing of CTC inmates, the rule survives constitutional scrutiny.

To the extent the SAC alleges a claim because OP 1015 conflicts with CDCR regulations governing inmate access to commissary and other sources of personal food, such a claim fails. There is no federal constitutional liberty interest in compliance with state prison regulations. *Solomon v. Felker*, 2013 WL 5375538, at *12 (E.D. Cal. Sept. 24, 2013) ("Plaintiff's allegation that the defendants failed to adhere to the prison's own institutional policies and procedures does not, by itself" give rise to a constitutional violation); *Sandin v. Conner*, 515 U.S. 472, 481–82, (1995) (recognizing prison regulations are "primarily designed to guide correctional officials in the administration of a prison" and are "not designed to confer rights on inmates"); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."); *see also Armstrong v. Warden of USP*

6

*Atwater*, 2011 WL 2553266, at *8 (E.D. Cal. June 24, 2011) (citing same).  Thus, Plaintiff does not have a cognizable claim based on Defendant Pfeiffer's alleged failure to comply with CDCR regulations.

## CONCLUSION AND RECOMMENDATION

Based on the above, the undersigned finds Plaintiff's SAC fails to state any cognizable claim.  The SAC suffers from many of the same pleading deficiencies that the undersigned identified and explained to Plaintiff in screening his original Complaint.  In particular, it fails to allege that the challenged KVSP regulation was not rationally related to a legitimate penological objective.  Despite being provided with guidance and the appropriate legal standards, Plaintiff was unable to cure the deficiencies identified above.  A plaintiff's repeated failure to cure a complaint's deficiencies constitutes "a strong indication that the [plaintiff has] no additional facts to plead."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (citation and internal quotation marks omitted).  Thus, the undersigned recommends that the district court dismiss the SAC without further leave to amend.  *McKinney v. Baca*, 250 F. App'x 781 (9th Cir. 2007) (citing *Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir.1992)) (noting discretion to deny leave to amend is particularly broad where court has afforded plaintiff one or more opportunities to amend his complaint).

ACCORDINGLY, it is **ORDERED**:

The Clerk of Court randomly assign this case to a district judge for consideration of these Findings and Recommendation.

It is further **RECOMMENDED**:

The Second Amended Complaint (Doc. No. 13) be dismissed under § 1915A for failure to state a claim and this case be dismissed.

## NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  *Id*.; Local Rule 304(b).  The document should be captioned,

"Objections to Magistrate Judge's Findings and Recommendations." The assigned District Judge will review these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:     March 15, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE