UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LOKERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>C. PFEIFFER,<br><br>    Defendant. | Case No. 1:23-cv-01513-KES-HBK (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT<br><br>FOURTEEN DAY OBJECTION PERIOD<br><br>(Doc. No. 22) |

Pending before the Court is Plaintiff's Motion for Leave to Amend Complaint, filed on September 3, 2024. (Doc. No. 22, "Motion"). Plaintiff accompanies his Motion with a proposed Third Amended Complaint. (Doc. No. 23). For the reasons stated below, the undersigned recommends the Motion be denied.

**PROCEDURAL BACKGROUND**

Plaintiff is a state prisoner proceeding pro se and *in forma pauperis* on his Second Amended Complaint filed under 42 U.S.C. § 1983. (Doc. Nos. 13, 15). On March 15, 2024, the undersigned issued Findings and Recommendations to dismiss Plaintiff's SAC because it failed to allege a cognizable federal claim. (Doc. No. 17). On March 28, 2024, Plaintiff timely filed "Objections to Magistrate Judge's Findings and Recommendations" which argues his claim was

1  incorrectly brought under 42 U.S.C. § 1983 and instead should have been brought under the
2  Americans with Disabilities Act.  (Doc. No. 18 at 2).  On June 26, 2024, Plaintiff subsequently
3  filed a "Motion to Amend or Dismiss as Moot" in which he stated that due to his transfer from
4  Kern Valley State Prison ("KVSP") to High Desert State Prison ("HDSP"), his claims based on
5  KVSP policies were now moot.  (Doc. No. 19 at 1-2).  Accordingly, Plaintiff either sought leave
6  to amend the SAC to allege claims based on similar policies at HDSP, or to dismiss his case
7  without prejudice if the Court were not inclined to grant a motion to amend.  (*Id*. at 2).  After the
8  Court issued an order on August 9, 2024, directing Plaintiff to clarify the relief being sought in
9  his "Motion to Amend or Dismiss as Moot," he filed the instant Motion to Amend and lodged a
10  proposed Third Amended Complaint.  (Doc. Nos. 22, 23).

## APPLICABLE LAW AND ANALYSIS

12  Under Rule 15, a party "may amend its filing once as a matter of course . . . ."  Fed. R.
13  Civ. P. 15(a)(1).  For subsequent amendments, "a party may amend its pleading only with the
14  opposing party's written consent or the court's leave. The court should freely give leave when
15  justice so requires."  Fed. R. Civ. P. 15(a)(2).  If an otherwise deficient pleading can be remedied
16  by alleging other facts, a *pro se* litigant is entitled to an opportunity to amend their complaint
17  before dismissal of the action.  *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en
18  banc); *Lucas v. Department of Corr*., 66 F.3d 245, 248 (9th Cir. 1995).  A district court can deny
19  leave "where the amendment would be futile . . . or where the amended complaint would be
20  subject to dismissal."  *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

21  In the proposed SAC, Plaintiff seeks to challenge HDSP's personal food policy at the
22  prison's correctional treatment center ("CTC") on the basis that it violates his right to equal
23  protection under the Fourteenth Amendment.  (Doc. No. 23 at 4-5).  The HDSP policy, which
24  applies to both convalescent patients and long-term disabled inmates like Plaintiff who are being
25  housed in the CTC, permits those inmates to obtain personal food through either canteen
26  purchases or package purchases.  (*Id*. at 4).  It does not, however, permit them to purchase
27  personal food through food sales offered by local businesses or from the vending machines during
28  contact visits.  (*Id*.).

2

Plaintiff concedes that the KVSP policy he previously challenged is "much more restrictive" than the one he is now challenging at HDSP; KVSP did not permit CTC inmates any option for obtaining personal food due to the various dietary restrictions of inmate-patients housed in CTC at KVSP. (*Id*. at 5). Nevertheless, Plaintiff acknowledges that the KVSP policy was rationally related to the legitimate goal of preventing CTC inmates from circumventing dietary restrictions. (*Id*.). Plaintiff also notes that the personal food policy "is set at the CDCR level . . . but it is interpreted at the local level" and that "of the three CTCs [he's] been to so far, none permit the inmates visitor center food or access to food sales." (*Id*.).

Plaintiff states that HDSP officials have not provided any justification for the policy, and he contends that it cannot be justified under the same rationale as offered for KVSP's policy. (*Id*. at 5-6). Plaintiff argues that because CTC inmates are housed individually and are "isolated for out-of-cell time," one inmate with no dietary restrictions could not provide unapproved personal food to another inmate who was subject to dietary restrictions. (*Id*.). He argues that the personal food restrictions are legitimate as applied to "sick people who will get better" but that they should not apply to "disabled inmates [who] are being stuffed here because there is nowhere else to put them." (*Id*.).

### A. Venue is Improper in This Court

Plaintiff's TAC does not challenge the personal food policies at KVSP due to his transfer to HDSP. Instead, the TAC challenges the personal food policies for inmates assigned to the CTC unit at HDSP. HDSP is located in Susanville, CA, which is in Lassen County and within the jurisdiction and venue of the Sacramento Division of this Court. *See* Local Rule 120(d). Thus, Plaintiff should have filed a complaint in the Sacramento Division of this Court. *See* 28 U.S.C. § 1391(b); *see also Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995) (reviewing federal court jurisdiction and venue in a § 1983 action). While Local Rule 120(f), permits the Court to transfer a civil action which has not been commenced in the proper court to the correct court, the Court does not find that the interests of justice warrant a transfer of this case to the Sacramento Division under 28 U.S.C. § 1406(a) and Local Rule 120(f) because, as more fully set forth below, the lodged TAC fails to state claim.

B. <u>Fourteenth Amendment Equal Protection Claim</u>

"No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). There are two different ways in which a plaintiff may state an equal protection claim. A plaintiff's first option is to allege "facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class[.]" *Id*. (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)). The second way a plaintiff may state a claim is "as a 'class of one' by alleging that [the] plaintiff has 'been intentionally treated differently from others similarly situated and that there is no rational basis for the treatment[.]" *Koboyashi v. McMulling*, 2022 WL 3137958, at *23 (C.D. Cal. May 31, 2022) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "Because 'the disabled do not constitute a suspect class' for equal protection purposes, a governmental policy that purposefully treats the disabled differently from the non-disabled need only be 'rationally related to legitimate legislative goals' to pass constitutional muster." *Lee v. Cnty. of Los Angeles*, 240 F.3d 754, 772 (9th Cir.), opinion withdrawn and superseded sub nom. *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)

Because Plaintiff is not a member of a suspect class and does not have a fundamental right to personal food, *see McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987) (holding that "[i]nmates . . . have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion"); *see also LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing") citing *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) HDSP's food policy need only be rationally related to a legitimate government objective. And the burden is on Plaintiff to show that the policy bears no rational relationship to a conceivable legitimate penological objective. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("[t]he burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.").

4

The Court finds that the same general rationale offered by KVSP officials for their personal food policy, i.e. preventing inmates with special medical concerns from having access to unapproved personal food, logically applies at HDSP.[1]  Preventing CTC inmates, whether recovering from an illness or suffering from a long-term disability, from accessing personal food through the vending machines during contact visits or through food sales furthers this legitimate goal.

While prison officials can condition canteen orders on a doctor's signature, as Plaintiff noted in his proposed amended complaint, (Doc. No. 23 at 5), or control the delivery of a package containing unauthorized food, presumably medical staff cannot easily monitor the more informal purchases made through community food sales and vending machines during contact visits. Limiting the access of CTC inmates to personal food to channels that can be effectively monitored and controlled by prison officials, including doctors, canteen personnel, and mailroom staff, is rationally related to the legitimate goal of controlling the availability of personal food in an area of the prison with special medical needs.

Plaintiff implies that prison administrators could make a distinction between two different CTC occupants—those who are convalescent and those who are housed there due to a disability. (*Id*.). But Plaintiff does not provide any persuasive argument why, given the similarity in these two populations, prison officials should distinguish between them.  Moreover, the Court is very reluctant to require that prison administrators add further complexity to the already-challenging task of managing a prison. *See Overton*, 539 U.S. at 132 ("we must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."); *see also Sandin v. Conner*, 515 U.S. 472, 482 (1995) ("federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment.").  Indeed, the relative simplicity of offering only two options for purchasing personal food to CTC inmates, many of whom have special health and dietary needs

---

[1] Moreover, given that Plaintiff asserts the policy is set at the state level, the same basic rationale should apply to a similar policy at another CDCR institution.

1  that require monitoring, is itself a rational basis for the policy.

2  Moreover, Plaintiff has not alleged any injury from the policy that would confer standing
3  to sue. *See Moore v. California Corr. Health Care Servs*., 2017 WL 1408154, at *2 (E.D. Cal.
4  Apr. 20, 2017) (recommending dismissal of inmate's claim on standing grounds where any injury
5  asserted by plaintiff was "entirely speculative"). "Standing to sue is a doctrine rooted in the
6  traditional understanding of a case or controversy." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338
7  (2016). To establish Article III standing, three elements must be satisfied: a "plaintiff must have
8  (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the
9  defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*
10 *v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff, as the party invoking federal
11 jurisdiction, bears the burden of establishing these elements. *Id.* (citing *FW/PBS, Inc. v. Dallas,*
12 493 U.S. 215, 231, (1990)). Where, as here, a case is at the pleading stage, the plaintiff must
13 "clearly . . . allege facts demonstrating" each element. *Id.* (citing *Warth v. Seldin,* 422 U.S. 490,
14 518 (1975)).

15 Here, Plaintiff cannot satisfy the first element of standing—an injury in fact. Even assuming
16 that mere inability to access personal food constituted a cognizable injury, Plaintiff's TAC notes
17 that the HDSP policy still permits two methods for accessing personal food. And unlike his
18 initial Complaint, which alleged that KVSP's policy resulted in Plaintiff losing a package of
19 personal food, here Plaintiff alleges no specific harm from HDSP's policy. Accordingly, the
20 Court finds that Plaintiff's TAC fails to remedy the deficiencies in his Fourteenth Amendment
21 equal protection claim.

22 C. <u>Americans with Disabilities Act Claim</u>

23 Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act apply
24 to inmates within state prisons. *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206
25 (1998); *see also Armstrong v. Wilson,* 124 F.3d 1019, 1023 (9th Cir.1997); *Duffy v. Riveland,* 98
26 F.3d 447, 453–56 (9th Cir. 1996).

27 In order to state a claim under the ADA, a plaintiff must have been "improperly excluded
28 from participation in, and denied the benefits of, a prison service, program, or activity on the

basis of his physical handicap." *Armstrong v. Wilson,* 124 F.3d 1019, 1023 (9th Cir. 1997). "To establish a violation of [Section] 504 of the RA, a plaintiff must show that (1)[he] is handicapped within the meaning of the RA; (2)[he] is otherwise qualified for the benefit or services sought; (3)[he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." *Id.* "Title II of the ADA incorporates the 'nondiscrimination principles' of Section 504 and extends them to state and local government without regard to the receipt of federal financial assistance." *Does 1-5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir. 1996) (internal citation omitted).

"[A]lthough "[i]ncarceration itself is hardly a 'program' or 'activity' to which a disabled person might wish access, . . . there is no doubt that an educational program is a program, and when it is provided by and in a state prison it is a program of a public entity." *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997) citing *Crawford v. Indiana Dep't of Corrections*, 115 F.3d 481, 483 (7th Cir. 1997). "In addition, since Congress has directed that the ADA and RA be construed consistently, see 42 U.S.C. § 12134(b), the term "program" in the ADA can also be read, in light of our prior cases concerning the RA, to encompass prison activities. *Armstrong*, 124 F,3d at 1023; *see also Collings v. Longview Fibre Co*., 63 F.3d 828, 832 n. 3 (9th Cir. 1995) (cases involving the RA are "instructive" for claims under the ADA); cert. denied, 516 U.S. 1048 (1996).

Here, Lokerson does not specify the nature of his disability, but asserts that he is a "permanently disabled inmate[] who require[] nursing assistance." (Doc. No. 23 at 5). For purposes of these findings and recommendation, the Court will assume for purposes of analysis that Plaintiff is handicapped within the meaning of the RA and ADA.

Given the broad understanding courts have ascribed to the term "prison service, program, or activity"[2] within the ADA, the Court assumes *arguendo* that access to personal food is such a

---

[2] *See*, *e.g.*, *Hernandez v. Cnty. of Monterey*, 110 F. Supp. 3d 929, 935–36 (N.D. Cal. 2015) ("Because of the unique nature of correctional facilities, in which jail staff control nearly all aspects of inmates' daily lives, most everything provided to inmates is a public service, program or activity, including sleeping, eating, showering, toileting, communicating with those outside the jail by mail and telephone, exercising, entertainment, safety and security, the jail's administrative, disciplinary, and classification proceedings,

1  service, program or activity.  However, Plaintiff's TAC does not establish that Plaintiff was
2  "excluded from participation in" or "denied the benefits of" access to all personal food, even if
3  personal food consitutes a prison "program."  *Armstrong v. Wilson,* 124 F.3d at 1023.  Plaintiff's
4  TAC indicates that the HDSP personal food policy limits him and other CTC inmates to two
5  viable methods for obtaining personal food.  The TAC does not allege that Plaintiff is being
6  excluded from obtaining personal food altogether, only that two methods for doing so—
7  community food sales and vending machine purchases—are not available to him as a CTC
8  inmate.  As with his Fourteenth Amendment claim, Plaintiff does not identify in what way he is
9  being denied the benefits of a prison program merely because he is limited to purchasing personal
10 food through the canteen or package deliveries.

11      Nor does the HDSP personal food policy limit participation on the basis of disability.  The
12 policy applies to all inmates in the Correctional Treatment Center, many of whom are only
13 housed there temporarily following medical care and are not disabled.  Plaintiff contends that
14 "disabled CTC inmates [should] get access to purchase the same food as other similarly-situated
15 HDSP inmates"; but arguably he wants to be treated *differently* than other HDSP inmates housed
16 in the CTC, who are likewise governed by the personal food policy.  Indeed, the fact that both
17 disabled and non-disabled inmates in the CTC are subject to the same policy arguably defeats
18 Plaintiff's claim that he is suffering discrimination based on his disability.  *See Baughman v.*
19 *Bowman*, 2024 WL 1248135, at *12 (E.D. Tex. Feb. 7, 2024) ("where disabled and non-disabled
20 prisoners are subjected to the same conditions, an ADA or RA claim fails"), report and
21 recommendation adopted, 2024 WL 1251497 (E.D. Tex. Mar. 22, 2024).

22      For reasons set forth above, the undersigned finds that permitting Plaintiff to allege his
23 claim under the ADA does not make it viable; accordingly, he fails to show that his TAC would

---

medical, mental health and dental services, the library, educational, vocational, substance abuse and anger management classes and discharge services."); *see also Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010) (noting that jails provide inmates "with various positive opportunities, from educational and treatment programs, to opportunities to contest their incarceration, to the fundamentals of life, such as sustenance, the use of toilet and bathing facilities, and elementary mobility and communication.").

remedy the deficiencies in his Second Amended Complaint.

### D.  Damages Claim for Lost Package

Finally, Plaintiff's TAC realleges the property claim that the Court previously advised him was not cognizable in his initial Complaint.  As the Court stated in its initial November 28, 2023 screening order:

> An action [for damages based on loss of his personal food package] is barred because California provides state prisoners adequate post-deprivation remedies through the Government Claims Act to satisfy the due process clause.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (finding that "a negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (holding that California has an adequate post-deprivation remedy through the Government Claims Act process.).  Accordingly, Plaintiff cannot state a Fifth Amendment Due Process Claim based on the taking of his property.  Instead, Plaintiff should seek a monetary remedy for his Fifth Amendment property claim through California's Government Claim Act process.

(Doc. No. 9 at 6).  Plaintiff seeks to reassert this claim in this TAC, however for the same reasons the Court previously identified, this claim is not cognizable under Section 1983 and again Plaintiff fails to cure the deficiencies in his Second Amended Complaint.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion to Amend and proposed Third Amended Complaint fails to show that he can cure the deficiency in his operative complaint.  Each of his proposed claims, under the Fourteenth Amendment equal protection clause, the Americans With Disabilities Act, and the Fifth Amendment takings clause would be subject to dismissal. Accordingly, the undersigned finds that granting Plaintiff further leave to amend his complaint would be futile.  *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (A district court can deny leave "where the amendment would be futile . . . or where the amended complaint would be subject to dismissal").  The undersigned therefore recommends denying Plaintiff's Motion to Amend.  *See Wolgin*, 722 F.2d at 394-95.

Accordingly, it is **RECOMMENDED**:

The district court deny Plaintiff's Motion to Amend.  (Doc. No. 22).

9

## NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id.*; Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:     December 19, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE